IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JACK A. HALEY, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 06-0489-CV-W-NKL-P |
| ) | |
| LARRY DENNY, ) | |
| and ) | |
| JEREMIAH W. (JAY) NIXON, ) | |
| ) | |
| Respondents. ) | |

**ORDER**

Petitioner Jack A. Haley ("Haley") has filed an Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Doc. # 15]. For the reasons set forth herein, Haley's Amended Petition will be denied.

**I.   Overview**

    **A.   Factual[1] and Procedural Background**

On October 29, 1999, Haley, his cousin John Smith and four friends and relatives went to the Odyssey nightclub. Around 1:30 a.m., an Odyssey employee asked Smith to leave the nightclub because he had become loud and belligerent. Smith refused, and two doormen removed him from the nightclub. Smith's sister, Rachel, followed Smith and the

---

[1]The Missouri Court of Appeals described the facts related to Haley's underlying criminal conviction in *State v. Haley*, 73 S.W.3d 746, 749-50 (Mo. Ct. App. 2002). The relevant facts are recounted here.

1

doormen outside. Once outside, a fight broke out between Smith and the doormen. Rachel attempted to intervene on behalf of Smith, but was subdued by the doormen.

Meanwhile, Haley left the nightclub and retrieved Smith's vehicle, a Chevrolet Blazer. Haley drove up to the curb in front of the Odyssey. The Blazer's passenger door faced the nightclub. Haley exited the vehicle and approached the doormen, who initially restrained and then released him. Haley returned to the Blazer, opened the driver's side door and reached into the area behind or under the driver's seat. Moments later, witnesses at the scene heard gunshots and saw Haley holding a gun. Two witnesses saw Haley point his gun toward the nightclub. Two other witnesses saw Haley shoot the gun from the passenger side of the vehicle. An Odyssey patron and one of the doormen, Kenny Grigsby, were shot and seriously injured.

Haley, Smith and Shawn Medlock immediately left the scene in Smith's Blazer. Haley was driving. The Blazer was pulled over and the three men were arrested. During a subsequent search of the vehicle, officers found a box of bullets and a gun with blood on it.

While en route to the police station, Smith asked the officers if he had killed anyone and said he had been enraged over the doormen's treatment of his sister. Several hours later, he gave a videotaped confession, admitting he fired the gun outside the nightclub. Smith was released by the police and was not charged, despite his confession. Smith recanted his confession a few days later, claiming he was intoxicated and did not remember making any statements to the police.

2

The police continued to investigate and, based on eyewitness accounts, eventually arrested Haley for the shooting. Haley was charged with two counts of first-degree assault and two counts of armed criminal action. On October 13, 2000, a jury convicted Haley on all four counts. Haley's motion for a new trial was denied and he was sentenced to concurrent terms of fifteen years' imprisonment on each assault charge, to be served consecutively with concurrent terms of twelve years on each armed criminal action charge, for a total of 27 years' imprisonment.

Haley filed his direct appeal on December 8, 2000. The Court of Appeals affirmed his conviction on February 26, 2002. *See State v. Haley*, 73 S.W.3d 746 (Mo. Ct. App. 2002). Haley's motion for rehearing in the Court of Appeals was denied. On April 17, 2002, Haley filed an application for transfer to the Missouri Supreme Court, which was also denied.

On August 20, 2002, Haley filed a Rule 29.15 post-conviction motion, which was amended by appointed counsel. The amended motion alleged Haley's trial counsel was ineffective in: (1) failing to obtain DNA testing of the bloodstain on the gun used in the shooting; and (2) failing to inform the court about a sleeping juror during witness testimony at trial. The motion court held an evidentiary hearing and, later, denied post-conviction relief on April 5, 2004. The Missouri Court of Appeals affirmed the motion court's judgment on March 29, 2005.

On June 16, 2006, Haley filed his Petition for a Writ of Habeas Corpus in this Court. Haley filed his Amended Petition on October 6, 2006.

B.  **New Evidence**

Haley has uncovered new evidence pertinent to his case. It includes the following:

1.  **Ally Ruble's Affidavit**

On August 17, 2006, Ally Ruble signed a sworn affidavit stating that she was at the Odyssey on the night of the shooting. Ruble describes interacting with a man at the bar wearing a Cardinals' shirt or jersey.[2] She swears that the man in the Cardinals' shirt had a tattoo on his right upper arm and that he got into a fight with the doormen, who took him out of the club. She further testifies that "[t]he cute guy in the Cardinals' shirt got almost into the 'Blazer' on the passenger side, then jumped back out, then I saw him swing his hand back and forth toward the club and I heard shots. I did not see a gun." [Ex. F, Ruble Aff. at 2].

2.  **Charles Nance's Affidavit**

On May 31, 2006, Charles Nance signed a sworn affidavit stating that, as he was leaving the Odyssey on the night of the shooting, he observed and experienced the following:

> I begin to leave with my date and eventually I see a Caucasian white male with a weapon. There is an SUV in front of the club with the passenger side facing the club. The passenger side was open. I am sure I saw someone sitting in the driver seat of the SUV. I saw a man reach into the passenger seat from the outside and turn around with a gun. He was outside of the vehicle. I am not sure what the man was wearing because I was looking through the tinted glass. When the man turned with the gun I turned around to get my date back

---

[2] Smith wore a Cardinals' jersey the night of the incident.

4

>                   in to the back of the club.  At this point I heard three to four
>                   shots.  I did not actually see the man fire the shots.

[Ex. J, Nance Aff.]

### 3. DNA Testing

Technical Associates Incorporated conducted DNA tests on the blood found on the gun that was used in the shooting.  The test results indicate that the blood was Shawn Medlock's and not Haley's.

### 4. Regina Chancellor's Testimony

Regina Chancellor is Smith's sister.  She testified at a post-conviction hearing that Smith confessed to her that he was the shooter.

### 5. Michael Johnson's Affidavit

On August 6, 2002, Michael Johnson signed an affidavit stating that Kenny Grigsby (one of the bouncers who was shot at the Odyssey) told him that "when he was in the courtroom he saw the other guy, John Frank [Smith] at the time of [Haley's] sentencing.  He knew at that time, the wrong man was in jail and the right man was on the street."  [Ex. N, Johnson Aff.]

## II. Discussion

Haley claims three general grounds for relief in his amended petition for habeas corpus: actual innocence, prosecutorial misconduct and ineffective assistance of counsel.  Some of Haley's claims were adjudicated on the merits in state court proceedings.  The Court's review of those claims is limited by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254.

Under AEDPA, federal courts considering habeas petitions must "exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327, F.3d 748, 751 (8th Cir. 2003). AEDPA mandates that a federal court may not grant a writ of habeas corpus unless the state court's decision (1) was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," (2) involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States," or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Id*. at 751-52.

### A.     Actual Innocence

Haley argues that new evidence and undisputed circumstantial evidence establishes his actual innocence. Therefore, he claims that he is entitled to review of his procedurally defaulted claims and is entitled to habeas corpus relief based on a free standing innocence claim.

#### 1.     Free Standing Innocence

The Supreme Court has not determined whether a prisoner may receive a writ of habeas corpus based solely on a showing that the prisoner is innocent. *House v. Bell*, 126 S. Ct. 2064, 2086-87 (2006). The Supreme Court has hinted that a federal court may be able to entertain a freestanding actual innocence claim but has noted that the threshold for any such claim is "extraordinarily high." *Herrera v. Collins*, 506 U.S. 390, 417, 113 S. Ct. 853 (1993). Because Haley's new evidence cannot even satisfy the less stringent

6

"gateway innocence" threshold, the Court need not evaluate Haley's free standing actual innocence claim.

### 2. Gateway Innocence

The standard for actual innocence review of a defaulted claim in federal habeas corpus is less stringent than the "extraordinarily high" threshold discussed in *Herrera. Bell*, 126 S. Ct. at 2087; *Schlup v. Delo*, 513 U.S. 298, 316, 115 S. Ct. 851 (1995) ("If a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his [defaulted] underlying claim."). In *Schlup*, the Supreme Court held that to pass through this "gateway", "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. The *Schlup* court further explained that in making its determination "the district court is not bound by the rules of admissibility that would govern at trial. Instead, the emphasis on 'actual innocence' allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial." *Id.* at 327-28.

In this case, Haley has five new pieces of evidence. First, Ruble's affidavit in which she states that Smith (the man with the Cardinals' shirt) almost got into the passenger side of the Blazer and then jumped back out and was swinging his hand back and forth in the direction of the club just before the shots were fired. Second, Nance's

7

affidavit in which he states that someone was sitting in the Blazer's driver's seat while someone else was standing outside the passenger side with a gun. Third, Chancellor's testimony that her brother (Smith) confessed to her that he was the shooter. Fourth, Johnson's affidavit in which he states that Grigsby (one of the victims) identifies Smith and not Haley as the shooter. And, fifth, DNA tests showing that the blood on the gun was Medlock's.

This is not a case of conclusive exoneration. The question is whether it is more likely than not that no reasonable juror would have found Haley guilty beyond a reasonable doubt had the new evidence been presented at trial. Haley was convicted, in part, because two witnesses saw him with the gun in his hand and two other witnesses saw him shooting the gun from the passenger side of the Blazer. Ruble's affidavit establishes that Smith was outside the passenger side of the Blazer, but Ruble does not put the gun in Smith's hands. Nance's affidavit establishes that someone standing outside the passenger side had a gun and someone was in the drivers' seat, but Nance is not able to identify any of the participants. Johnson's affidavit that Grigsby now believes the wrong man is in jail constitutes hearsay evidence. Even if the contents of Johnson's affidavit are true, Grigsby's statement does not make it more likely that no reasonable juror would not find reasonable doubt given the fact that three other witnesses either place the gun in Haley's hand or otherwise identify him as the shooter.

Chancellor's testimony duplicates evidence already heard by the jury. Smith made incriminating statements in the presence of police while being transported to the police

8

station and, hours later, gave a full confession. The jury saw the videotaped confession and chose not to believe it. Had the jury not believed Smith's confession because of some misconduct or coercive practice by the police, then the fact that Smith also confessed by telephone to his sister would be compelling. But, in this case, the facts suggest that Smith was a willing and eager confessor and Haley does not suggest that Smith's confession was disbelieved by the jury because they thought it involuntary. Thus, that Smith also willingly confessed to his sister does not make it more likely that the jury would now believe Smith actually was the shooter.

Finally, the DNA test does little to exonerate Haley. It is persuasive as to Haley's innocence only to the extent that it tends to support the theory that Medlock, who was seated in the back seat on the passenger's side, handed the gun to the shooter. Haley cannot persuasively argue both (1) that Smith committed the shooting and (2) that Haley is conclusively exonerated by DNA tests showing that neither he nor Smith's blood was on the gun.

The Court finds that Haley's new evidence is insufficient to establish "gateway" innocence under *Schlup*. It is not more likely than not that no reasonable juror would have found Haley guilty beyond a reasonable doubt had the new evidence been presented at trial. Therefore, Haley has established neither free standing actual innocence nor gateway innocence.

### B. Prosecutorial Misconduct

9

It is well settled that the proper functioning of our system of criminal justice requires prosecutors to remain faithful to truth, even if such fidelity reduces the likelihood of conviction. *Berger v. United States*, 295 U.S. 78, 88 (1935) (noting that a prosecutor's interest in a criminal prosecution "is not that [she] shall win a case, but that justice shall be done"). Where prosecutorial misconduct is alleged, the prosecutor's remarks must have been improper and the remarks "must have been so prejudicial as to deprive the defendant of a fair trial." *Young v. Bowersox*, 161 F.3d 1159, 1162 (8th Cir. 1998).

Haley asserts he was denied a fair trial due to prosecutorial misconduct (1) during the State's closing argument, (2) when the prosecutor made the decision to charge him and (3) when the prosecutor allowed Smith to perjure himself at trial.

### 1. Closing Argument

As a general matter, the trial court has broad discretion in controlling closing arguments. *United States v. Ziesman*, 409 F.3d 941, 954 (8th Cir. 2005); *Richardson v. Bowersox*, 188 F.3d 973, 980 (8th Cir. 1999) ("Closing arguments may be limited to the facts in evidence and reasonable inferences flowing therefrom." (quotation omitted)).

Haley argues the prosecutor is guilty of misconduct for misleading the jury during closing arguments by stating there was no evidence to exonerate Haley: "And you can bet if there was a single witness out there that said that the gentleman in the Cardinals jersey was the one who fired the shots that night, they would be right there." [Tr. 603.] In support of this argument, Haley recounts the inconsistencies between the prosecution's witnesses' testimony and those individuals' deposition testimony. Haley asserts that the

10

prosecutor's use of the witnesses, specifically David Allen, Troy Dexter, Ken Grigsby and Christopher Fortner, to support the State's case against Haley constitutes prosecutorial misconduct because the prosecutor knew that the witnesses had previously testified in a manner that supported the defense's theory that Smith was the shooter.

Haley also argues that the prosecutor intentionally misled the jury when she explained away Smith's videotaped confession by suggesting that drug use impaired Smith's sense of reality. This was done despite the fact that the prosecutor knew that the police considered Smith sober and competent at the time he gave his videotaped confession.

Haley objected when the prosecutor made her "And you can bet" statement during closing argument. The trial court sustained Haley's objection on the ground that the statement constituted impermissible burden shifting. Haley then moved for a mistrial, which the trial judge denied. In the alternative, Haley asked the court to instruct the jury to disregard the prosecutor's statement and the trial court did so, stating: "The jury is instructed that the statement made by the prosecutor about the bringing of a witness is not appropriate and you are to disregard that statement in his argument. And again, I would tell you that argument is not evidence. It is the statements of counsel relating to the evidence as they believe it to be." [Tr. 605.]

Haley contends that the prosecutor's statement amounts to prosecutorial misconduct, and that the jury could not possibly have disregarded the prosecutor's statement, despite the trial judge's instruction. [P's Reply at 9.] On appeal in state court,

11

Haley raised this claim within the context of impermissible burden shifting, not general prosecutorial misconduct. Accordingly, this claim is defaulted.

Even if the claim were not defaulted, there is no reason to believe that, even after being told to disregard the statement, the jury was prejudiced by the prosecutor's remark such that Haley did not receive a fair trial. Accordingly, habeas relief is not warranted on this claim.

### 2. The Charging Decision

Haley also argues prosecutorial misconduct on the grounds that "there was too much evidence [supporting] the validity of John Smith's confession for the prosecutor to ignore it and proceed against Jack Haley, Jr." [P's Mot. at 34.] Haley's argument was not raised in the state court and is, therefore, procedurally barred. In addition, prosecutorial discretion is a well-established facet of our criminal justice system. *United States v. Beede*, 974 F.2d 948, 952 (8th Cir. 1992) ("[P]rosecutors must remain free to exercise their prosecutorial discretion with respect to the charging decision."). Haley has produced no evidence that the prosecutor was driven by an illegal or untoward motive to convict him. Therefore, even if Haley's claim were not barred, exercising prosecutorial discretion under these circumstances is not prosecutorial misconduct.

### 3. Suborning Perjury

"Where the use of known perjury involves prosecutorial misconduct, it constitutes corruption of the truth-seeking function of the trial process." *Lindhorst v. United States*, 658 F.2d 598, 602 (8th Cir. 1981) (quotation omitted). A prosecutor's use of perjured

testimony requires a conviction to be set aside "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.* (quotation omitted).

The prosecutor called Smith as a witness and permitted him to testify that he had no recollection of his videotaped confession. The prosecutor also permitted Smith to testify that he was not the shooter. Haley contends that allowing Smith to testify to both is gross prosecutorial misconduct because both statements cannot possibly be true. [P's Mot. at 38.] The prosecutor also examined witnesses at trial without probing them for information that might suggest Smith was the shooter. For example, Haley claims misconduct because the prosecutor asked witnesses to identify the shooter based on photographic or in-court identification as opposed to using the witnesses' descriptions given to the police which included the shooter's physical description, that he was wearing a Cardinals' jersey, that he was the man escorted from the club or that he was in a certain location when the shots were fired. [P's Mot. at 40.]

A prosecutor is not precluded from using at trial witnesses whose memory is imperfect. And, a prosecutor's use of such witnesses is not equivalent to a prosecutor knowingly suborning perjury. Indeed, Smith's spotty recollections and the other witnesses' inconsistent statements should have provided ample fodder from which Haley's counsel could impeach the State's witnesses. *Murray v. Delo*, 34 F.3d 1367, 1376 (8th Cir. 1994) ("[I]t often happens that witnesses contradict themselves in statements given from time to time. Such contradictions are material for cross-

13

Case 4:06-cv-00489-NKL   Document 18   Filed 01/10/07   Page 13 of 16

examination and may cause the jury to disbelieve the witness. They do not without more establish perjury.").

Haley's claim that his prosecutor suborned perjury is procedurally barred because it was never raised on direct appeal. Even if the claim were not defaulted, the prosecutor's use of these witnesses did not constitute prosecutorial misconduct. Accordingly, habeas relief is not warranted on this claim.

### C. Ineffective Assistance of Counsel

Haley argues that his trial counsel was ineffective for (1) failing to have a DNA test performed on the blood found on the gun, (2) failing to conduct a reasonable investigation to identify eyewitnesses to the crime and (3) failing to demonstrate that Grigsby's testimony that he saw a tattoo on the shooter's underarm is highly improbable.

To prove ineffective assistance of counsel, Haley must show that his counsel's performance was deficient and that Haley was prejudiced by the defense he received. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984).

#### 1. DNA Test

Haley believes his trial attorney was ineffective because he did not have a DNA test done on the blood on the gun used in the shooting:

> Testing the blood on the gun and the bullet box (and bullets), and having it all independently analyzed was absolutely essential to a reasonably competent defense. Had said testing been conducted, it would have shown someone other than Haley handled the gun and bullets. Stated another way, the exclusion of Haley as the source of the blood on the gun and bullet box casts a gigantic

14

shadow of doubt on the State's case, if not altogether
exonerating Haley as the handler/shooter of the weapon.

[P's Mot. at 42.]

The Missouri Court of Appeals, however, found no error in the motion court's determination that:

> [I]t was reasonable trial strategy not to conduct DNA testing on the bloodstained gun, because all three men in the car had been bloodied during the nightclub brawl and the test might have produced an unfavorable result for Haley. The court noted that the absence of DNA testing allowed trial counsel to argue the blood belonged to someone else and that police had poorly investigated the case by not conducting the testing themselves. The court further found that even if the DNA test results had been presented to the jury, such evidence would not have exonerated Haley in light of testimony from four eyewitnesses that he was holding the gun when shots were fired outside the nightclub.

[Supp. Mem. at 5-6.]

The Missouri Court of Appeals' application of *Strickland* to the facts of this case was not unreasonable. Accordingly, habeas relief is not warranted on this claim.

### 2. Investigating Eyewitnesses and Challenging Tattoo Identification

Haley claims that his counsel was ineffective for "failing to conduct a reasonable investigation to identify eyewitnesses to the crime, including but not limited to Ally Ruble and Charles Nance, and failing to demonstrate that Grigsby's testimony that he saw a tattoo on the shooter's underarm is highly improbable." [P's Mot. at 44.] Haley concedes that these claims were not presented in prior post-conviction review proceedings, but argues the claims are not subject to a procedural bar because Haley

15

satisfies *Schlup*'s gateway innocence standard. In a previous section, the Court found that Haley did not satisfy *Schlup*'s gateway innocence standard. Accordingly, these claims are procedurally barred.

## III.     Conclusion

Accordingly, it is hereby

ORDERED that Petitioner Jack Haley's Amended Petition for a Writ of Habeas Corpus is DENIED.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated:  <u>January 10, 2007</u>
Jefferson City, Missouri